UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FAITH ELIZABETH VINNEDGE,

      Plaintiff,

  v.                                         Case No. 18-C-229

NANCY A. BERRYHILL,
Acting Commissioner of Social Security

      Defendant.

## DECISION AND ORDER

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Faith Vinnedge's application for supplemental security income under Title XVI of the Social Security Act. For the reasons set forth below, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

This case has resulted in a long history of appeals through the federal administrative and judicial system. Vinnedge completed an application for supplemental security income on December 9, 2010, with a protective filing date of December 3, 2010, alleging disability beginning August 1, 2008. She listed depression, anxiety/panic disorder, attention deficit disorder, asthma, and epilepsy as the conditions that limited her ability to work. R. 182. Her application was denied initially and on reconsideration. Vinnedge subsequently requested an administrative hearing before an administrative law judge (ALJ), and on June 12, 2012, ALJ Patricia Hartman held a hearing. On June 21, 2012, ALJ Hartman concluded that Vinnedge was not disabled under the Social Security

Act. R. 16–34. Vinnedge filed a request for review with the Appeals Council, which the Appeals Council denied, making ALJ Hartman's decision the final decision of the Commissioner. R. 1128. Having exhausted her administrative remedies, Vinnedge filed a complaint on July 3, 2013, in the United States District Court for the Eastern District of Wisconsin, seeking judicial review of the ALJ's decision. The matter was ultimately reversed and remanded for further proceedings based upon a stipulation of the parties. R. 1139–40; *see Vinnedge v. Colvin*, Case No. 13-C-760 (E.D. Wis.).

A second hearing was held before ALJ Timothy J. Malloy on October 8, 2015. In a 19-page decision dated January 21, 2016, ALJ Malloy determined Vinnedge was not disabled within the meaning of the Act. R. 1005–23. Vinnedge subsequently filed a complaint in the United States District Court for the Eastern District of Wisconsin, seeking judicial review of the ALJ's decision. Again, pursuant to a joint motion for remand, the matter was ultimately reversed and remanded for further proceedings. R. 1460–61; *see Vinnedge v. Colvin*, 16-C-482 (E.D. Wis.). In accordance with the district court remand order, the Appeals Council directed the ALJ to obtain evidence from a medical expert, if necessary, to clarify the nature and severity of the claimant's impairment, reconsider whether fibromyalgia was a severe impairment and caused restrictions, evaluate the opinion of Dr. Patricia Griffen, evaluate Vinnedge's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms, consider Vinnedge's residual functional capacity and provide appropriate rationale with specific references to the evidence in support of the limitations, obtain supplement evidence from a vocational expert to clarify the effect of the limitations on Vinnedge's occupational base, and offer Vinnedge the opportunity for a hearing. R. 1465–67.

ALJ Malloy held a third administrative hearing on September 21, 2017. Vinnedge, who was represented by counsel, an impartial medical expert, and an impartial vocational expert testified. At the time of the administrative hearing, Vinnedge was 30 years old. R. 1396. She lived in a house with her three children, ages 5, 10, and 12. R. 1396–97. She had a high school education and had sporadically worked as a cashier and as a janitor until 2013, when she slipped at work and hurt her back. R. 1398. Vinnedge testified that she tried to walk one block each day. R. 1402.

In a 21-page decision dated December 12, 2017, the ALJ found Vinnedge was not disabled. R. 1324–44. Following the agency's five-step sequential evaluation process, the ALJ concluded at step one that Vinnedge had not engaged in substantial gainful activity since December 3, 2010, the application date. R. 1326. At step two, the ALJ found Vinnedge had the following severe impairments: fibromyalgia, left sacroiliac joint dysfunction, a spine disorder, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, personality disorder, and polysubstance abuse disorder. R. 1327. He noted that, although the record referenced other impairments including, obesity, asthma, a history of a seizure disorder, pelvic inflammatory disease, gastroesophageal reflux disease, menometrorrhagia, headaches, and a history of methicillin-resistant Staphylococcus aureurs, those conditions were nonsevere impairments. *Id.* At step three, the ALJ determined Vinnedge's impairments or combination of impairments did not meet or medically equal any listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 1329.

After reviewing the record, the ALJ concluded Vinnedge had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) and limited her to "unskilled work performing simple, routine and repetitive tasks; a low stress job setting defined as only occasional changes in the job setting and occasional decision making; no interaction with the public; occasional

3

interaction with coworkers and supervisors that is brief and superficial and she may work in their presence; only individually performed work tasks; only work that does not involve travel; no environmental exposure to psychoactive substances, such as work in bars, liquor stores and drug stores (by way of example); and no fast-paced production work but end of day quotas are permitted." R. 1331. With these limitations, the ALJ found at step four that Vinnedge has no past relevant work. R. 1343. At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Vinnedge can perform, including hand stop material mover, general office clerk, and accounting clerk. R. 1343–44. Based on these findings, the ALJ concluded Vinnedge was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner. Thereafter, Vinnege commenced this action for judicial review.

**LEGAL STANDARD**

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v.*

*Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Vinnedge raises several challenges to the ALJ's decision, but the court finds only one need be addressed since it is enough by itself to require a remand. Vinnedge asserts that the ALJ impermissibly played doctor in assessing her CT scans on his own without the assistance of a medical expert. Dr. Rosteing, a consultative examiner who performed an internal medicine evaluation of Vinnedge in June 2017, opined that Vinnedge had a number of limitations. In particular, Dr. Rosteing found that Vinnedge's left sacroiliac joint dysfunction along with moderate scoliosis resulted in marked limitations in standing, walking, lifting, bending, stooping, and anything else that relied on left SI joint function. The ALJ gave little weight to Dr. Rosteing's opinion about Vinnedge's work capacity. The ALJ found that

> the medical test results in the record do not support this assessment. As set forth above, a CT scan of the pelvis in May 2015 showed postsurgical changes from a left sacroiliac joint fusion but no hardware failure and no acute causes to explain pain . . . . Likewise, a CT scan in May 2016 showed a left SI joint fusion with intact hardware, no acute boney abnormality, and a normal-appearing lumbar spine . . . . These test results indicate that the claimant's left SI joint dysfunction did not cause such significant limitations, such as an inability to sit for more than four hours in the workday and the inability to walk a block at a reasonable pace on a rough or uneven surface.

R. 1339.

"An ALJ may not conclude, without medical input, that a claimant's most recent [imaging] results are 'consistent' with the ALJ's conclusions about her impairments." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (citing *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018)); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding after ALJ failed to submit new MRI to medical scrutiny); *Israel v. Colvin*, 840 F.3d 432, 440 (7th Cir. 2016) (noting that "[b]ecause no physician in the record has opined on whether these results [from two MRIs] are consistent with Israel's claim of disabling pain, and because the reports are replete with technical language that does not lend itself to summary conclusions, we cannot say whether the results support or undermine Israel's claim"). In *Akin v. Berryhill*, the Seventh Circuit concluded that the ALJ impermissibly "played doctor" by evaluating MRI results that had not been interpreted by a state agency physician. 887 F.3d at 317. The court noted that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." *Id.* (citing *Goins*, 764 F.3d at 680; *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)). Explaining further, the court stated:

> The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion. The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion. *See Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). But because the ALJ impermissibly interpreted the MRI results himself, we vacate the judgment and remand this case to the agency.

*Id.* at 317–18.

In light of the law in this circuit, the ALJ is not qualified to conclude that the imaging studies are inconsistent with Dr. Rosteing's opinions without an expert opinion from a medical source regarding the imaging. The court concludes that the ALJ erred in assessing how the CT

6

scans relate to other evidence in the record by interpreting those records himself. Accordingly, the ALJ's interpretation of the CT scans constitutes reversible error. The case will be remanded for this reason.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this  1st  day of March, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court